# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Elias M.,[1]

      Petitioner,

v.

Todd Blanche, *Acting Attorney General*; Markwayne Mullin, *Secretary, U.S. Department of Homeland Security*; Todd M. Lyons, *Acting Director of Immigration and Customs Enforcement*; David Easterwood, *Acting Director, St. Paul Field Office Immigration and Customs Enforcement*; Joel Brott, *Sheriff, Sherburne County*,

      Respondents.

File No. 26-CV-2519 (JMB/DLM)

**ORDER**

---

Andrew Crowder, Eugene Hummel, and Gabriel Ramirez-Hernandez, Norton Rose Fulbright US LLP, Minneapolis, MN, for Petitioner Elias M.

David W. Fuller and Pedro Del Valle, IV, United States Attorney's Office, Minneapolis, MN, for Respondents Todd Blanche, Markwayne Mullin, Todd M. Lyons, and David Easterwood.

---

This matter is before the Court on Petitioner Elias M.'s Amended Petition for a Writ of Habeas Corpus (Petition) against Respondents Todd Blanche, Markwayne Mullin, Todd M. Lyons, David Easterwood (together, the Federal Respondents), and Joel Brott (together,

---

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental party in immigration cases.

1

with the Federal Respondents, Respondents).  (Doc. No. 12 [hereinafter, "Am. Pet."].)  For the reasons explained below, the Court grants the Amended Petition.

## FINDINGS OF FACT

1.      Elias M. is a national of Guatemala who was smuggled into the United States as an unaccompanied minor by a "coyote" in or around August 2014 when he was sixteen years old.  (Am. Pet. ¶¶ 15, 23.)  Elias M. was apprehended by border patrol agents, who released him on an order of recognizance to live with his brother and father in Minnesota on August 22, 2014.  (*Id.* ¶ 23.)

2.      On October 2, 2014, a United States Immigration Court issued an order of removal for Elias M. after he failed to attend a removal hearing.  (*Id.* ¶ 25.)  At the time, Elias M. was still a minor who was under the care of his father.  (*Id.*)  There is no record evidence that Elias M. missed any other hearings or failed to appear at any other immigration proceedings.  There is also no evidence concerning why Elias M. or his father did not appear or when, or even if, Elias M. or his father received notice of this hearing.

3.      In or around 2019, Elias M. was assaulted while in Minnesota, and shortly thereafter he applied for a U-1 visa.  (*Id.* ¶ 27.)

4.       On April 24, 2025, almost ten years after the 2014 removal hearing and six years after submitting his 2019 U-1 visa application, Elias M. received a notice that "the evidence submitted with [his] petition appears to demonstrate [he has] established the eligibility requirements for U nonimmigrant status, but that "the statutory cap for U-1 nonimmigrant status has been reached for this fiscal year."  (Doc. No. 1-2.)  Therefore,

Elias M. was "placed in deferred action as permitted by regulation" by the United States Citizen and Immigration Services (USCIS).  (*Id.*)

5.      There is no evidence that Elias M. missed any appointments or appearances in any legal proceeding since the federal government granted him deferred action status.

6.      The April 24, 2025 notice of deferred action status was mailed to Elias M.'s residential address, the same address he has used in connection with his application and the same address where he has resided for many years.  (Am. Pet. ¶ 28.)

7.      Elias M. has remained in Minnesota and currently works as a mechanic in Minneapolis.  (*Id.* ¶ 29.)  He lives here with his partner and his son.  (*Id.*)

8.      On May 5, 2026, Immigration and Customs Enforcement (ICE) arrested Elias M., without a warrant, while he was driving his car.  (*Id.* ¶ 30.)

9.      On May 6, 2026, Elias M. filed his first petition with the Court, after which the Court issued an order to show cause, prohibiting Respondents from moving Elias M. out of the District of Minnesota.  (Doc. Nos. 1, 5.)

10.     On May 14, 2026, Elias M. filed his Amended Petition pursuant to 28 U.S.C. § 2241.  (*See generally* Am. Pet.)  In it, he asks the Court to order his immediate release on the grounds that his deferred action status does not permit him to be detained, his detention violates his due process rights, and he was subject to an improper warrantless arrest.  (*Id.*)

11.     Also on May 14, 2026, Elias M.'s counsel filed notice with the Court that Respondents had transferred him to Louisiana in violation of the Court's order prohibiting

transfer out of the District of Minnesota. (Doc. Nos. 13, 14.) The Federal Respondents filed a status update the next day that Elias M. had, in fact, been transferred,

12. and that he would be returned to Minnesota on or about May 19, 2026. (Doc. No. 17.) The Court's understanding is that Elias M. was, in fact, returned to Minnesota on this day.

13. The Federal Respondents also timely filed their answer to the Amended Petition on May 20, 2026, and Elias M. timely filed his reply on May 22, 2026. (Doc. Nos. 19, 20, 22.) Brott has not appeared.

## DISCUSSION

Elias M. seeks immediate release pursuant to 28 U.S.C. § 2241, arguing that his detention is unlawful in light of his unrevoked deferred action status and the requirements of due process, and that his warrantless arrest was unlawful.[2] (*See generally* Am. Pet.) The Court agrees and grants the Amended Petition.

### A.    Constitutional Guarantee of Habeas Review

---

[2] Elias M. also argues that the removal period during which 8 U.S.C. § 1231 permits detention has long since passed. (Am. Pet. ¶¶ 45–49.) In light of the Court's decision to grant the Amended Petition on other grounds, the Court need not also separately determine whether Elias M. is correct on this point. *See Ulysse v. Dep't of Homeland Sec.*, 291 F. Supp. 2d 1318, 1325 (M.D. Fla. 2003) (stating that the federal government's interpretation of the removal period in § 1231 "flies in the face of the plain reading of the statute and Congress'[s] intent that removal of the [noncitizen] or at least a bona fide attempt to remove the [noncitizen], should be done within 90 days of the removal order being final"). Without reaching the question, the Court observes that there is no evidence in the record that any efforts were taken to execute the final order of removal from the date it issued in 2014 through the date of Elias M.'s arrest on May 5, 2026.

As a threshold matter, the Court notes that a writ of habeas corpus may be granted to any person who demonstrates he is in custody in violation of the Constitution or laws of the United States.  28 U.S.C. § 2241(c)(3); *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (concluding that the Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States" (citing U.S. Const., Art. I, § 9, cl. 2)).  For most of the nation's history, habeas review "has remained a critical check on the Executive, ensuring that it does not detain individuals except in accordance with law." *Id.* (quotation omitted). The right to challenge the legality of a person's confinement through a petition for a writ of habeas corpus "extends to those persons challenging the lawfulness of immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citation omitted). The petitioner bears the burden of proving that his detention is illegal by a preponderance of evidence. *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154 (D. Minn. 2025).

**B.**    **Detention of Persons with Deferred Action Status**

Elias M. argues that Respondents are precluded from detaining him pending the outcome of removal proceedings unless and until his previously deferred action status has been revoked.  The Federal Respondents do not contest that Elias M. has been granted deferred action or directly respond to his argument that granting deferred action precludes *detention*.[3]    Instead, the Federal Respondents characterize the Amended Petition as

---

[3] The Court notes its concern that neither Elias M.'s U-1 visa application nor his grant of deferred action were included in Respondents' attached declaration from Immigration and Customs Enforcement purporting to be based on a review of Elias M.'s "[noncitizen] file, statements, and e-mails." (Doc. No. 20.)  The Court would expect that such declarations

challenging their decision to commence *removal proceedings* and argue that such a challenge falls outside this Court's habeas jurisdiction. (Doc. No. 19 at 7–8.) As discussed below, the Court concludes that the Federal Respondents mischaracterize the Amended Petition and that the Court has jurisdiction to consider the Amended Petition. In addition, given the absence of any argument to the contrary, the Court agrees with Elias M. that his deferred action status precludes mandatory detention and that his ongoing detention violates due process.

### 1. *Jurisdiction*

The Court concludes it can properly exercise jurisdiction over the Amended Petition. Contrary to the Federal Respondents' characterization of the Amended Petition as challenging initiation of removal proceedings (which the Court cannot review, 8 U.S.C. § 1252(g)), Elias M. does not directly challenge the decision to execute the 2014 removal order or request that this Court enjoin or review the removal proceedings. Instead, Elias M. asserts that he cannot be detained pending the removal proceedings because he was previously granted deferred action. Elias M.'s challenge therefore falls within this Court's habeas jurisdiction, even if a somewhat related argument could also be advanced as a challenge to removability in the removal proceedings themselves. *See, e.g.*, *Nevarez Jurado v. Freden, et al.*, 813 F. Supp. 376, 385–88 (W.D.N.Y. 2025) (collecting cases); *Sepulveda Ayala v. Bondi*, 794 F. Supp. 3d 901, 908–09 (W.D. Wash. 2025) (concluding that district courts have habeas jurisdiction over claims of unconstitutional immigration

---

would include *all* relevant immigration history, and if not, that it be clearly stated why certain items have been left out to permit petitioners an opportunity to properly respond.

detention of persons with unrevoked deferred action status); *Aguilar Gama v. Bondi*, No. 2:25-CV-1925 (TL), 2025 WL 3559942, at *3 (W.D. Wash. Dec. 12, 2025) (holding that, "[b]ut for the grant of deferred action, Petitioner would have no basis to challenge his detention," and it was "thus clear that Petitioner's claims arise from USCIS's grant of deferred action, combined with ICE's refusal to honor that grant, rather than the execution of a removal order").

### 2. Merits

The Court next turns to the merits of the Amended Petition and Elias M.'s challenge to ongoing detention. First, as noted above, the Federal Respondents argue only that the Court lacks jurisdiction; they offered no argument and reference no legal authority to support their proposition that the law mandates detention of persons granted deferred action or the proposition that deferred action status has no effect on whether a person must be detained pending the outcome of removal proceedings. The Federal Respondents, therefore, have waived any opposition to Elias M.'s argument that his detention is illegal. *See Rodriguez-Quiroz v. Lynch*, 835 F.3d 809, 822 n.6 (8th Cir. 2016) (noting that the government forfeited or waived an argument by failing to raise it in an immigration appeal); *Estephanny P. v. Bondi*, No. 26-CV-0198 (ECT/JFD), 2026 WL 115067 (D. Minn. Jan. 15, 2026) ((citing *Doe v. Mayorkas*, No. 22-cv-752 (ECT/DTS), 2022 WL 4450272, at *2 (D. Minn. Sep. 23, 2022) (concluding that failure to respond is an express waiver of those arguments or claims)).

Second, the Court is persuaded by the legal authority on which Elias M. relies and concludes that, as a matter of law, Respondents are precluded from detaining Elias M.

pending the outcome of removal proceedings because his previously deferred action status has not been revoked. Deferred action is a discretionary act conferring a benefit to the recipient, namely, the assurance that the federal government will take no action against a deportable or removable person. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 484 (1999) (Scalia J.) (concluding that "[a]pproval of deferred action status means that, for . . . humanitarian reasons[,] . . . no action will thereafter be taken to proceed against an apparently deportable alien, even on grounds normally regarded as aggravated" (quoting 6 C. Gordon, S. Mailman, & S. Yale-Loehr, *Immigration Law & Proc.* § 72.03(2)(h) (1998))). In *Victor G. v. Lyons*, No. 26-CV-119 (ECT/SGE), 2026 WL 127733 (D. Minn. Jan. 17, 2026), the Court described deferred action as "an exercise of prosecutorial discretion that defers the removal of the [noncitizen] based on the [noncitizen's] case being made a lower priority for removal." *Id.* at *2 (quoting New Classification for Victims of Criminal Activity; Eligibility for "U" Nonimmigrant Status, 72 Fed. Reg. 53015 n.2 (Sept. 17, 2007)); *see also Dep't of Homeland Sec. v. Reg. of the Univ. of Cal.*, 591 U.S. 1, 54 (2020) (Roberts, C.J.) ("The defining feature of deferred action is the decision to defer removal . . . ."); *Id.* at 55 (Thomas, J., concurring) (describing the effect of deferred action as "create[ing] a new category of [noncitizens] who, as a class, became exempt from statutory removal procedures.").

In this case, the Federal Respondents do not dispute that they have not revoked or taken any steps to terminate Elias M.'s deferred action status. Nor do Respondents argue that Elias M.'s arrest was an act of discretion tied to the disposition of Elias M.'s U-1 visa application or deferred action status. Therefore, and in light of the nature of deferred

action, this Court agrees with the court in *Victor G.*, which concluded that the Federal Respondents' "conception of deferred action . . . as an exercise of pure discretion that can shift on a dime" was contrary to and "difficult to square with . . . the Supreme Court's past pronouncements on the topic." 2026 WL 127733, at *2 (citing *Regents*, 591 U.S. at 54). Such a conception of deferred action would "result in a system where grants of deferred action would have no effect—not the system envisioned by Justice Scalia where 'no action will . . . be taken to proceed against an apparently deportable [noncitizen], even on grounds normally regarded as aggravated.'" *Id.* (citing *Reno*, 525 U.S. at 484). Unless and until Elias M.'s deferred action is terminated or revoked, his detention is unlawful. *E.g.*, *Nevarez Jurado*, 813 F. Supp. at 393 (concluding that petitioner's detention was unlawful "so long as his grant of deferred action remains unrevoked"); *see also, e.g.*, *Jaime D.B. v. Easterwood*, No. 26-CV-0891 (MJD/DTS), 2026 WL 578754, at *2 (D. Minn. Feb. 25, 2026), *report and recommendation adopted sub nom. D.B. v. Easterwood*, No. 26-00891 (MJD/DTS), 2026 WL 592854 (D. Minn. Mar. 2, 2026) (concluding that the federal government must actually revoke a grant of deferred action before detaining and removing a noncitizen); *Victor G.*, 2026 WL 127733, at *3 (concluding that absent "factual allegations to support that Respondents revoked Victor's deferred action," there is "no basis for his detention"); *Primero v. Mattivelo*, No. 1:25-CV-11442 (IT), 2025 WL 1899115, at *5 (D. Mass. July 9, 2025) (concluding that because "USCIS granted [petitioner] deferred action that will remain valid until September 7, 2026, . . . [respondents] must afford Petitioner a bail hearing").

9

Finally, the Court also, separately and independently, agrees with the *Nevarez Jurado* court that detention of a noncitizen upon whom the federal government has conferred the benefit of deferred action status, without any revocation or pre-deprivation process, hearing, or individualized determination, violates that person's due process rights. 831 F. Supp. 3d at 391–93; *see also Forsah R-Z v. Noem*, No. 1:26-CV-0832 (DJC/AC), 2026 WL 310069, at *1–2 (E.D. Cal. Feb. 5, 2026) (ordering immediate release of petitioner with previous unrevoked grant of deferred action because ongoing detention without any process concerning revocation of deferred action violated petitioner's due process rights); *F.R.P. v. Wamsley*, No. 3:25-CV-01917 (AN), 2025 WL 3037858, at *5 (D. Or. Oct. 30, 2025) (collecting cases) (same). The Court adopts the *Mathews v. Eldridge* balancing test conducted in that case and reaches the same conclusions here: Elias M. has a protected interest in his freedom; the lack of any discernible procedure concerning revocation of deferred action creates a high risk that Elias M. will continue to be erroneously deprived of his liberty; and the government's interest in continuing to detain Elias M. is relatively slight given his deferred action status. Again, the Federal Respondents do not directly contend otherwise. Therefore, Elias M. has also established that his ongoing detention violates the Fifth Amendment's Due Process Clause.

### C.    Warrantless Arrest Requirements

Elias M. also separately challenges his detention by arguing that no exception to the warrant requirement exists to justify his warrantless arrest. Again, the Court agrees and grants the Amended Petition on this alternative basis as well.

Section 1357(a)(2) permits a warrantless arrest when the arresting officer has probable cause to believe the following two conditions are present: "[1] that the [person] arrested is in the United States in violation of any [law or regulation concerning the admission, exclusion, expulsion, or removal of noncitizens,] and [2] is likely to escape before a warrant can be obtained for his arrest."  8 U.S.C. § 1357(a)(2); *see also* 8 C.F.R. § 287.8 (c)(2)(ii) (providing that a warrant of arrest "shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained").  The "reason to believe" in section 1357(a)(2) "means constitutionally required probable cause."  *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010).

The Federal Respondents devoted only a single paragraph of their 12-page brief to this argument.  From this cursory paragraph, it appears that the Federal Respondents believe the second prong of section 1357—the "likely to escape" prong—is satisfied because of the following four reasons: (1) Elias M.'s "lack of status" at the time of his arrest; (2) Elias M. "drove in a vehicle identified as belonging to him"; (3) Elias M. "had been a no-show to his immigration court proceedings for years"; and (4) Elias M. "had evaded enforcement of his final removal order for over a decade."  (Doc. No. 19 at 10.) The Court disagrees.

First, the Federal Respondents' summary paragraph misstates the undisputed facts in this case.  It is undisputed that on April 24, 2025, the federal government granted Elias M. deferred action status (Doc. No. 2-1) and thereafter took no steps to revoke or otherwise terminate this status.  Thus, it is not accurate to state that Elias M. had a "lack of status";

11

the federal government had granted him deferred action status. Likewise, the undisputed facts indicate that Elias M. missed a single appearance more than ten years before being granted deferred action status on April 24, 2025. Thus, it is false to say that Elias M. "had been a no-show to his immigration court proceedings for years." Finally, it is disingenuous to state that Elias M. had "evaded enforcement of his final removal order for over a decade" because there is no evidence in the record of evasion. To the contrary, it is undisputed that Elias M. identified himself to immigration officials in 2019 when he filed his U-1 visa application and that at least some of the Federal Respondents knew his current and long-standing address when they mailed a notice to him concerning that application and granting him deferred status at that address. (Doc. No. 1-2; Am. Pet. ¶ 28.)

Second, the arresting officer lacked probable cause to believe that Elias M. was likely to escape. As a threshold matter, the Court is careful not to interpret *Quintana* as supporting the proposition that probable cause to suspect a person is deportable (which could satisfy the first prong of section 1357) can constitute probable cause that the person is likely to escape (the second prong). Such an interpretation would effectively render meaningless the second prong, and it would justify the arrest of all noncitizens under section 1357. *See, e.g.*, *Francisco M.A. v. Blanche*, No. 26-CV-2032 (JRT/EMB), 2026 WL 1229701, at *3 (D. Minn. May 5, 2026) ("Just because a noncitizen is unlawfully present in the United States does not mean that he or she is likely to escape."); *Ruben D.A.G. v. Blanche*, No. 26-CV-2041, Doc. No. 9 at 8 (D. Minn. Apr. 20, 2026) ("Anyone without a lawful presence does not immediately present a likelihood of escape merely by being a noncitizen.").

More substantively, the facts of this case fall far short of those in *Quintana*, especially when it comes to indicia of likelihood of escape. In *Quintana*, the petitioner had no documents on him to verify his identity, agents could not find any corresponding records to validate his claims of legal entry into the country, and he was suspected of a criminal drug-trafficking offense. 623 F.3d at 1238, 1240–41. None of those important facts are present here. Here, the Federal Respondents have had records to validate Elias M.'s whereabouts and identity since at least 2019. They even communicated with him at his current address in April 2025. Further, the Federal Respondents have not made any attempt to include information concerning the nature of the traffic violation that precipitated the stop of Elias M.'s vehicle, or even whether the violation was a minor equipment violation, a civil violation, or a minor misdemeanor offense. In fact, the narrative field in Form I-213 describing the basis for Elias M.'s arrest contains no statements concerning the basis for the stop. (*See* Doc. No. 20-3.) It appears that the only basis was the existence of the final order of removal from 2014. (*Id.*) More importantly for the probable cause analysis, the Form I-213 includes no statements concerning likelihood of escape or any facts that the arresting officer actually considered that could support a finding of probable cause for a section 1357 arrest. (*See* Doc. No. 20-3.) Given this absence of information, *Quintana* is inapplicable, and the Court concludes that arresting officers lacked probable cause to believe that Elias M. was likely to escape.

Accordingly, Elias M. has shown that ICE's detention of him on March 25, 2026, violated the law because ICE did not comply with section 1357(a)(2), and as a result, Elias M. is entitled to release. *See Pina C.D.B. v. Bondi*, No. 26-CV-1929 (KMM/DJF), 2026

WL 810676, at *2–3 (D. Minn. Mar. 24, 2026) (collecting cases and concluding "immediate release is the proper remedy" for arrest effected in absence of valid administrative warrant); *see also Claudio A.A. v. Bondi*, No. 26-CV-0742 (KMM/LIB), 2026 WL 468232, at *7 (D. Minn. Feb. 12, 2026) (concluding that failure to provide a warrant before arrest pursuant to section § 1226(a) is a violation of due process rights and collecting cases), *report and recommendation adopted*, No. 26-CV-742 (KMM/LIB), 2026 WL 478347 (D. Minn. Feb. 18, 2026).

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT the Amended Petition (Doc. No. 12) is GRANTED, as follows:

1. Respondents must IMMEDIATELY release Petitioner Elias M. in Minnesota, without conditions of release, and in any event, on or before 5:00 p.m. CT on June 6, 2026.

2. On or before 11:00 a.m. CT on June 8, 2026, counsel for Respondents shall file a letter affirming that Petitioner was released from custody in accordance with this Order. Counsel shall also file a declaration on or before 11:00 a.m. CT on June 8, 2026, pursuant to 28 U.S.C. § 1746 by an individual with personal knowledge that states when and where the Petitioner was released, attaching any and all relevant documentation concerning the Petitioner's release, and affirms that all property of Petitioner was returned to Petitioner upon release (or, if property is retained, state which property is retained, the legal basis for its retention, and affirm that Respondents duly provided Petitioner with certified copies of any and all immigration-related documentation).

3. To the extent Petitioner Elias M. seeks additional relief, the Amended Petition is DENIED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

14

Dated:  June 5, 2026

/s/ *Jeffrey M. Bryan*
Judge Jeffrey M. Bryan
United States District Court